# MOORE v. UNITED STATES EX REL. COLBURN MACHINE GLASS COMPANY.

---

PATENTS; INTERFERENCE; MISTAKE; OPERATIVENESS; PRIORITY; DISSOLUTION.

1. Mistake or inadvertence in a drawing, obviously, from the description, made by the draughtsman, which represents an operative machine as containing a manifestly unnecessary extension of a shaft which would render it inoperative, should, without amendment, be disregarded in proceedings for interference, and the machine should be regarded as operative. (Citing *Arbetter* v. *Lewis,* 34 App. D. C. 491.)

mine the operativeness of Hitchcock's device in the following respect: "The shaft 8 extends from side to side of the machine Fig. 2. The grips, it is stated in lines 10, 11, page 7, are carried around the wheel 6, with the several sections (of glass) suspended therefrom. It is not seen how these sections can pass shaft 8." Prior to this notice of hearing, Hitchcock had filed an affidavit admitting that the shaft 8 in Fig. 2 of his drawing lay in the path of the glass, but stating that it was incorrectly shown, and showing how it should be changed. The Primary Examiner ruled that this was, in fact, an amendment, and could not, under the rules of the Office, be allowed pending an interference.

October 25th, 1907, the interference was dissolved on the inoperativeness of the device by reason of shaft 8 as shown in the drawing. From this Hitchcock did not appeal. Thereafter, on *ex parte* application of Hitchcock to amend, the Primary Examiner permitted the same as to shaft 8. Thereafter, patent was issued to Colburn and Washburn, January 7, 1908, on their original application, there being no longer an interference. Hitchcock continued to prosecute his reissue application *ex parte,* and, the same having been allowed finally, interference was again declared between the said reissue application and the Colburn and Washburn patent, in two counts identical with counts 2 and 3 of the former interference, No. 26,866. On the same day, March 18, 1909, interference was declared between Hitchcock's application that had been embraced in No. 26,006, and the patent, on the same issue in that interference which had been dissolved by the Primary Examiner, of his own motion, in order to bring that issue and the issue of the interference with the reissue application into one proceeding. Colburn and Washburn moved to dissolve the redeclared interference on the ground, among others, that the subject-matter was *res judicata* by reason of the decision dissolving the former interference for the inoperativeness of Hitchcock's device, from which the latter had not appealed. The Primary Examiner and the Examiners in Chief, in turn, sustained this view and dissolved the interference; but the Commissioner reversed the decision,

and issued notice for the taking of testimony.   On the ground that the question had been finally determined on the former motion to dissolve, and that the Commissioner was without power to entertain the second interference, the petition prayed that he be compelled to vacate said orders, and to stay all further proceedings.

*Mr. Robert F. Whitehead* for the Commissioner of Patents.

*Mr. Reeve Lewis, Mr. W. B. Kerkam,* and *Mr. S. T. Cameron* for the appellee.

*Mr. Marshall A. Christy* as *amicus curiæ.*

Mr. Chief Justice SHEPARD delivered the opinion of the Court:

It is obvious that shaft 8 of Hitchcock's original drawing, if intended to be constructed as indicated by the dotted line, would extend directly across the passage through which the suspended sheets of glass must necessarily pass, and thus prevent the operation of the machine. But it is alike obvious from the description that shaft 8 was not intended to be so extended. Its center section would have to be, and clearly could be, removed from the drawing without interfering with any other contemplated action of the machine, and the same would be completely operative.   This obvious error in the drawing had escaped the observation of the applicant, the officers of the Patent Office, and of Colburn and Washburn, who before had moved to dissolve upon other grounds.   Hitchcock's motion to amend, accompanied by an affidavit to show that the dotted line had been drawn through mistake or inadvertance of the draughtsman who prepared the drawing, and had escaped observation, was scarcely needed; and the allowance of the correction of the mistake was not an amendment in the sense of the rule prohibiting amendments of applications in interference, or of the statute and rule relating to reissue applications.   Without amendment, this man-

seem that it might in many cases be quite difficult to decide the question of priority where the evidence showed that the device disclosed in the application was not operative." When questioned, the right of a party to make the claims depends upon the disclosure of his application. If it be found that his application does not warrant the claims, then he is not an inventor of the issue, and there is no foundation for the claim of his opponent's invention. Each is entitled to the invention that he has in fact made, and may receive his patent thereto only. Having been defeated on the issue involved, he cannot go back and amend his specifications so as to embrace his opponent's invention, or file a new application for the purpose of interference. He is concluded by the former decision. But the situation is different where it is discovered, as in this case, that, through a draughtsman's potent mistake, the device, otherwise completely described and patentable, is rendered inoperative. If this mistake had been discovered before the allowance of the application, it would have been readily corrected, and the interference thereafter declared would have gone to trial on the question of priority in fact, and this question would not have arisen. If an interference be dissolved because the issue is held unpatentable, each party may pursue his application *ex parte,* and if by amendment an allowance of patentability shall be finally obtained by each, the interference may be again declared for the determination of priority. The first step to an interference is the allowance of the application for patent. Until allowed, there is no invention the priority of which can be contested. If a device, though claimed as described in the application, is, through its model or drawing, shown to be inoperative, it is not patentable, and the application is rejected. Unless reversed on *ex parte* appeal, after a second rejection, the decision of the Primary Examiner is conclusive; there is an end of the application. Operativeness of an invention, whether an inseparable part of patentability or not, is, when regularly allowed in the Office, as much a finality as the allowance of patentability. As before intimated, the proper course would have been, when the mistake in the drawing had been observed, to permit the cor-

rection of the manifest error without dissolving the interference. Failing that, it seems that the Commissioner might have dissolved the interference temporarily and expressly, without prejudice to its renewal when the drawing should be regularly corrected in due course. Whatever may have been the strict legal operation of the dissolution, without express reservation, it is apparent from the subsequent action of the Primary Examiner in permitting the correction of the drawing and redeclaring the interference, that he did not then understand that he had determined the question of priority.

Though the question is not free from all doubt, we are not prepared to say that the dissolution of the interference without reservation, on the ground that the machine was inoperative, is entitled to force and effect as an award of priority, within the rule of *United States ex rel. Newcomb Motor Co. v. Moore, supra.* As suggested by Mr. Justice Duell in the excerpt before made: "It might in many cases be quite difficult to decide the question of priority where the evidence showed that the device disclosed in the application was not operative." The present case is an apt example of that difficulty. The application described the invention; the claims made for patent accurately embodied the invention disclosed; and as such were allowed for patent. Interference was then declared with another application. Before testimony was ordered to be taken, the Examiner discovered the mistake of the draughtsman, who, by projecting the line of a shaft across the path of the sheets of glass, where it was not intended by the inventor to go, rendered the device inoperative. This did not involve the right to make the claims of the issue, but the allowability of the application as an entirety. Had the error not been thus early discovered, and the interference had been prosecuted to a final award in favor of Hitchcock, the Commissioner, upon its discovery, might have refused the patent for inoperativeness, unless the mistake should be corrected; and the same might have been done after an affirmance by this court. *Sobey* v. *Holzclaw,* 28 App. D. C. 65–82; *Dodge* v. *Fowler,* 11 App. D. C. 592–600. The conditions here shown are to some extent similar to those in *Re Fullager,* 32 App. D.

C. 222–228. Fullagar was also an applicant for the reissue of a patent. On this he was thrown in interference with Emmett, who had an original application. Motions to dissolve were made by each party. Fullagar was overruled, and two of Emmett's grounds sustained by the Primary Examiner. The Examiners in Chief reversed as to one ground, and affirmed the ground that Fullagar's showing of inadvertence, accident, or mistake was insufficient, and failed to overcome the lapse of time barring reissue. Emmett's appeal was dismissed by the Commissioner as without foundation, and the decision against Fullagar was affirmed. As said in the opinion: "He also stated, it is true, that Fullagar had no right to make the claims; but this remark is evidently as a result of the conclusion that Fullagar had failed to show that he had come within the requirements of reissue. Had he held that Fullagar had made a sufficient showing for reissue, and then decided that he had no right to make the claims of the interference, because not disclosed in his application, he would necessarily have awarded priority to Emmett. *United States ex rel. Newcomb Motor Co.* v. *Moore,* 30 App. D. C. 464. The latter's application having been allowed, and Fullagar having been put out of the case, there would remain nothing else to do. * * * If the Commissioner had decided that Fullagar was not entitled to make the claim under his application, and had, in consequence, awarded priority to Emmett, Fullagar would have the right to appeal, bringing Emmett up for final adjudication of the question of priority in this court. Instead of so deciding, the effect of his decision was to set aside the allowance of Fullagar's application as an entirety, and dissolve the interference. No award of priority was made in favor of Emmett. He was not declared entitled to the patent, nor was his application rejected. He had nothing from which he could appeal. * * * As there was no final decision in Emmett's favor, it follows that Fullagar could not bring him before this court by an appeal." Fullagar's appeal was dismissed, because it was an *ex parte* appeal from the rejection of his reissue application, and, by statute, a second rejection is required before the right of appeal in such a case accrues.

The. reasoning of that case is applicable to this. The point decided here was that Hitchcock's device, as shown in his orig-'linal patent drawings, was inoperàtive, and his reissue could not be allowed for that reason. The effect was to set aside the allowance of his reissue application as an entirety; the interference was dissolved without any award of priority claimed or made. On account of the special facts, we are of the opinion that the case falls under the rule governing *Gold* v. *Gold* and *Re Fullagar*, rather than under that governing *Newcomb Motor Co.* v. *Moore*. The question of priority was not *res judicata*, and the Commissioner of Patents had not lost jurisdiction in the premises. It follows that the judgment must be reversed, with costs, and the case remanded with direction to dismiss the petition.                                                        *Reversed.*